UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY RUTH ARRUDA, | No.  2:12-cv-2701 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties' cross-motions for summary judgment are pending.  For the reasons discussed below, the court will grant in part plaintiff's motion for summary judgment and will deny the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on May 17, 2007, alleging disability beginning on May 12, 2004.  Administrative Record ("AR") 184-88, 189-91.  Both applications were denied initially and again upon reconsideration.  AR 83-89, 107-11, 115-20.  On January 26, 2009, a hearing was held before administrative law judge ("ALJ") Sandra K. Rogers.  AR 61-82.

1   Plaintiff appeared with attorney representation at the hearing, at which she and a vocational

2   expert ("VE") testified.  Id.  In a decision dated March 25, 2009, the ALJ determined that plaintiff

3   was not disabled under sections 216(i), 223(d) of the Act as to her DIB claim and not disabled

4   under section 1614(a)(3)(A) of the Act as to her SSI claim.[1]  AR 93-102.  Plaintiff appealed this

5   decision to the Appeals Council, which granted plaintiff's request for review on February 23,

6   2010 and remanded plaintiff's claim back to the ALJ for further consideration.  AR 103-06.

7        On August 31, 2010, a second hearing was held before ALJ Rogers.  AR 39-60.  Plaintiff

8   again appeared with attorney representation at the hearing, at which she and a VE testified.  On

9

10        [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. §§ 401 et seq.  This requires determination of whether the
11  insured status requirements of sections 216(i) and 223 of the Social Security Act are met.
    Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et
12  seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful
    activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§
13  423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for
    benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76;
14  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential
    evaluation:
15

16           Step one:  Is the claimant engaging in substantial gainful activity?
             If so, the claimant is found not disabled.  If not, proceed to step
17           two.

18           Step two:  Does the claimant have a "severe" impairment?  If so,
             proceed to step three.  If not, then a finding of not disabled is
19           appropriate.

20           Step three:  Does the claimant's impairment or combination of
             impairments meet or equal an impairment listed in 20 C.F.R., Pt.
21           404, Subpt. P, App.1?  If so, the claimant is automatically
             determined disabled.  If not, proceed to step four.

22           Step four:  Is the claimant capable of performing his past work?  If
             so, the claimant is not disabled.  If not, proceed to step five.
23

24           Step five:  Does the claimant have the residual functional capacity
             perform any other work?  If so, the claimant is not disabled.  If not,
25           the claimant is disabled.

26  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27       The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28  evaluation process proceeds to step five.  Id.

2

1    January 10, 2011, the ALJ issued a decision finding plaintiff not disabled.  AR 26-33. The ALJ

2    made the following findings (citations to 20 C.F.R. omitted):

3              1.  The claimant meets the insured status requirements of the Social
               Security Act through March 31, 2011.
4

5              2.  The claimant has not engaged in substantial gainful activity
               since May 12, 2004, the alleged onset date.

6              3.  The claimant has the following severe impairment: chronic
               obstructive pulmonary disorder.
7

8              4.  The claimant does not have an impairment or combination of
               impairments that meets or medically equals one of the listed
               impairments in 20 CFR Part 404, Subpart P, Appendix 1.
9

10             5.  After careful consideration of the entire record, the undersigned
               finds that the claimant has the residual functional capacity to
               perform the full range of light work as defined in 20 CFR
11             404.1567(b) and 416.967(b) except she can have only moderate
               exposure to dues [sic], fumes, odors, gasses and poor ventilation.
12

13             6.  The claimant is capable of performing past relevant work as a
               cashier-checker (211.462-014, light, svp 3) and theater projectionist
               (960.362-010, light, svp 6). This work does not require the
14             performance of work-related activities precluded by the claimant's
               residual functional capacity.
15

16             7.  The claimant has not been under a disability, as defined in the
               Social Security Act, from May 12, 2004, through the date of this
               decision.
17

18   AR 26-33.

19        The Appeals Council denied plaintiff's request for review of this decision, leaving the

20   ALJ's January 10, 2011 decision as the final decision of the Commissioner of Social Security.

21   AR 1-6.

22                                    STATEMENT OF THE FACTS

23        Plaintiff was born on September 22, 1953.  AR 63.  She was 50 years old on her alleged

24   onset date, 55 years old at the first ALJ hearing, and 57 years old on the date of the ALJ's January

25   10, 2011 decision.  Plaintiff has a high school education.  AR 65.  Her past relevant work includes

26   cashier (she worked only two weeks in this position), theatre assistant manager, and, most

27   recently, worker in a cat sanctuary (she worked part-time in this position).  See AR 28.

28

LEGAL STANDARDS

1

2     The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3   of fact are supported by substantial evidence in the record and the proper legal standards were

4   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

5   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

6   180 F.3d 1094, 1097 (9th Cir. 1999).

7     The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

9   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

10  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

11  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

12  N.L.R.B., 305 U.S. 197, 229 (1938)).

13    "The ALJ is responsible for determining credibility, resolving conflicts in medical

14  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

15  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

16  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

17  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

18                                            DISCUSSION

19    Plaintiff moves for summary judgment on the ground that the ALJ erred when she found

20  that plaintiff did not have an arthritic impairment that was severe at the second step of the

21  sequential evaluation process.  Relatedly, plaintiff contends that the ALJ erred in finding her only

22  partially credible and in giving reduced weight to certain medical opinion evidence.

23  A.     Plaintiff's Arthritis as a Severe Impairment

24    Plaintiff argues first that the ALJ erred in failing to find that plaintiff's arthritis constitutes

25  a severe impairment at the second step of the sequential evaluation process.

26         1.     Legal Standards

27    "The step-two inquiry is a de minimis screening device to dispose of groundless claims."

28  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants

4

1    whose medical impairment is so slight that it is unlikely they would be disabled even if age,

2    education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

3    At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

4    impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not

5    severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

6    more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart, 433

7    F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  The step

8    two severity determination is "merely a threshold determination of whether the claimant is able to

9    perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima

10   facie case of a disability."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

11        At the second step, plaintiff has the burden of providing medical evidence of signs,

12   symptoms, and laboratory findings that show that his or her impairments are severe and are

13   expected to last for a continuous period of twelve months.  Ukolov v. Barnhart, 420 F.3d 1002,

14   1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909,

15   416.920(a)(4)(ii).  An ALJ's finding that a claimant is not disabled at step two will be upheld

16   where "there are no medical signs or laboratory findings to substantiate the existence of medically

17   determinable physical or mental impairment."  Ukolov, 420 F.3d at 1005.

18        If a severe impairment exists, all medically determinable impairments must be considered

19   in the remaining steps of the sequential analysis.  20 C.F.R. § 404.1523.  The ALJ "must consider

20   the combined effect of all of the claimant's impairments on her ability to function, without regard

21   to whether each alone [i]s sufficiently severe."  Smolen, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

22        2.      Analysis

23        At the second step of the sequential evaluation process, the ALJ found that plaintiff has

24   only one severe impairment: chronic obstructive pulmonary disorder ("COPD").  AR 29.

25   Although plaintiff is correct that the ALJ failed to discuss plaintiff's arthritis at this stage of her

26   analysis, the court finds any error to be harmless because the ALJ did consider plaintiff's arthritis

27   at the subsequent steps.  See Lewis v. Astrue, 498 F.3d 909 (9th Cir. 2007) (concluding that the

28   ALJ's classification of one of claimant's impairments as non-severe at the second step was

                                                5

1    harmless error because claimant was found to have other severe impairments, and the ALJ

2    extensively discussed claimant's non-severe impairment symptoms in the fourth step).

3          Moreover, in arguing that the ALJ erred at the second step by finding certain impairments

4    to be non-severe, plaintiff misunderstands the function of the second step as a gate-keeping

5    mechanism to dispose of groundless claims.  Once a claimant prevails at the second step by

6    achieving a finding of some severe impairment, regardless of which condition is found to be

7    severe, the Commissioner proceeds with the sequential evaluation, considering at each step all

8    other alleged medically determinable impairments that may impact the claimant's ability to work.

9    See 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental

10   impairment or impairments are of a sufficient medical severity that such impairment or

11   impairments could be the basis of eligibility under this section, the Commissioner of Social

12   Security shall consider the combined effect of all of the individual's impairments without regard

13   to whether any such impairment, if considered separately, would be of such severity.").

14         Here, plaintiff prevailed at the second step.  Therefore, any error in the second step was

15   harmless because the ALJ found that plaintiff's COPD was severe and continued on with the

16   remaining steps.  See Lewis, 498 F.3d 909 (9th Cir. 2007) (concluding that the ALJ's

17   classification of one of claimant's impairments as non-severe at the second step was harmless

18   error because claimant was found to have other severe impairments, and the ALJ extensively

19   discussed claimant's non-severe impairment symptoms in the fourth step); Smolen v. Chater, 80

20   F.3d 1273, 1290 (9th Cir. 1996) (recognizing that, if one severe impairment exists, all medically

21   determinable impairments must be considered in the remaining steps of the sequential analysis).

22   Thus, the question becomes whether the ALJ properly considered the functional limitations of all

23   medically determinable impairments at the remaining steps.  See Smolen, 80 F.3d at 1290.  As

24   discussed below, the ALJ considered plaintiff's arthritis at the remaining steps, but, for the

25   reasons discussed below, erred in her consideration of the medical opinion evidence.

26   B.      The ALJ's Credibility Determination

27           1.   Legal Standards

28           An ALJ's assessment of pain severity and claimant credibility is entitled to "great

1    weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d

2    528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical

3    factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v.

4    Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

5    1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

6    claimant was not credible is insufficient).

7           Under the "Cotton test," where the claimant has produced objective medical evidence of

8    an impairment which could reasonably be expected to produce some degree of pain and/or other

9    symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may

10   reject the claimant's testimony regarding the severity of the claimant's pain and/or other

11   symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing

12   so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80

13   F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v.

14   Sullivan, 947 F.2d 341, 343 (9th Cir.1991).  In other words, an ALJ may reject a claimant's

15   testimony only upon "(1) finding evidence of malingering, or (2) expressing clear and convincing

16   reasons for doing so."  Benton ex. el. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

17          To determine whether a claimant's testimony regarding the severity of her symptoms is

18   credible, the ALJ may consider, among other things, the following evidence: (1) ordinary

19   techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

20   statements concerning the symptoms, and other testimony by the claimant that appears less than

21   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

22   prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from

23   physicians and third parties concerning the nature, severity, and effect of the claimant's

24   symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d

25   at 1284.  Social Security Ruling 96–7p further provides that an individual may be less credible for

26   failing to follow prescribed treatment without cause.  Soc. Sec. Ruling 96-7p.

27          2.  Analysis

28          Plaintiff challenges the ALJ's credibility determination as improper.  Here, the ALJ found

1  plaintiff not fully credible for a number of reasons.  First, the ALJ concluded that the evidence

2  indicates that plaintiff exaggerates her symptoms.  To determine whether the claimant's testimony

3  is credible, an ALJ may consider typical techniques of credibility assessment, such as testimony

4  by the claimant "that appears less than candid."  Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d

5  1217, 1224 n.3 (internal quotation marks omitted).  Specifically, the ALJ may find that a claimant

6  is not credible if she has made exaggerated statements about the intensity and persistence of her

7  physical impairments.  Id. at 1225; Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)

8  (indicating that the ALJ properly considered plaintiff's tendency to exaggerate); Maounis v.

9  Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) ("The ALJ can disregard a claimant's self-serving

10  statements if they are unsupported by objective findings.")

11      The ALJ referred to multiple instances in which plaintiff's subjective complaints were

12  unsupported by objective findings.  For example, on March 11, 2004, plaintiff's report of

13  throbbing and weakness on the left side of her body that progressed to the left arm with headache

14  was initially diagnosed as a stroke, AR 362, but a CT of the brain was normal, AR 293.  Then, on

15  May 12 and 14, 2004, plaintiff complained of headache and reported a history of minor

16  cerebrovascular accident, but a scan of the head again revealed no abnormality, AR 282, and X-

17  rays on May 13, 2004 revealed clear lungs, AR 395.  Additionally, despite plaintiff's claims of

18  debilitating arthritis, including pain in her knees that last lasted approximately two hours a day, x-

19  rays of the hands and knees in June 2005 were normal, AR 295, and x-rays of the wrists showed

20  only mild osteoarthritis of the first carpometacarpal joint, AR 299-300.

21      The ALJ, of course, cannot discount plaintiff's credibility solely on the basis of objective

22  medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Bunnell v. Sullivan, 947

23  F.2d 341, 343, 345 (9th Cir. 1991).  Nonetheless, medical evidence may be considered as one

24  factor in assessing credibility.  Bunnell, 947 F.2d at 345 (ALJ may consider lack of objective

25  medical evidence to corroborate Claimant's subjective symptoms so long as it is not the only

26  reason for discounting Claimant's credibility); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

27  2005) (same); Rollins v. Massanari, 261 F.3d at 857 (objective medical evidence may not be sole

28  reason for discounting credibility but is nonetheless a legitimate and relevant factor to be

1   considered in assessing credibility).

2        In assessing plaintiff's credibility, the ALJ also found that the record established

3   inconsistent statements by plaintiff regarding the reason she stopped working.  It is well settled

4   that an ALJ may employ "ordinary techniques of credibility evaluation," including the claimant's

5   reputation for truthfulness and inconsistent statements on various matters.  See Tommasetti v.

6   Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

7   2002).  It follows that the ALJ may permissibly infer from plaintiff's inconsistent statements

8   about her work history that plaintiff is not fully credible about other issues, such as her subjective

9   symptoms.  See Tommasetti, 533 F.3d at 1040 (plaintiff's inconsistent testimony regarding the

10  reason he stopped working undermined his credibility); Courser v. Astrue, 2012 WL 195519, at

11  *5 (D. Or. 2012) (same).  In this case, while plaintiff's May 17, 2007 Adult Disability Report

12  attributes plaintiff's inability to work due to a stroke and arthritis, AR 214, the record established

13  that plaintiff stopped working for reasons other than her physical impairments.  See AR 214 ("I

14  stopped [working as a cashier] because I got blamed for something that's not my fault and was let

15  go"); AR 303 (plaintiff "was terminated" from her last job as a veterinary technician); AR 65

16  (plaintiff stopped working at the cat sanctuary due to "[l]ack of funds").

17       Additionally, the ALJ considered plaintiff's failure to stop smoking notwithstanding her

18  continued complaints of difficulty breathing.  Whether it was proper for the ALJ to cite her

19  continued smoking as adversely impacting her credibility is unclear.  See Bray v. Comm'r of Soc.

20  Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citing Shramek v. Apfel, 226 F.3d 809, 812-

21  13 (7th Cir. 2000) (noting, in dicta, that nicotine's addictive properties made it "extremely

22  tenuous" to discredit a claimant's description of her impairments based on the claimant's

23  continued smoking).  But even if the ALJ's reliance on plaintiff's failure to stop smoking was

24  erroneous, it amounts to harmless error since the ALJ presented other independent areas for

25  discounting plaintiff's credibility.  See Batson v, Comm'r of Soc. Sec. Admin., 359 F.3d 1190,

26  1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated

27  reasons for disbelieving a claimant's testimony, the error was harmless).  Thus, the court finds no

28  error in the ALJ's credibility determination.

1   C.      Medical Opinion Evidence

2           1.  Legal Standards

3           The weight given to medical opinions depends in part on whether they are proffered by

4   treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31

5   (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who

6   has a greater opportunity to know and observe the patient as an individual, than the opinion of a

7   non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans

8   v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-

9   examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

10          To evaluate whether the Commissioner properly rejected a medical opinion, the court

11  considers not only the opinion's source but also (1) whether contradictory opinions are in the

12  record, and (2) whether clinical findings support the opinions.  The Commissioner may reject an

13  uncontradicted opinion of a treating or examining medical professional only for "clear and

14  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

15  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

16  by an examining professional's opinion which is supported by different independent clinical

17  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

18  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

19  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

20  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

21  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

22  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

23  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

24  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

25  without other evidence, is insufficient to reject the opinion of a treating or examining

26  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

27  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

28  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

1   also Magallanes, 881 F.2d at 751.

2           2.   Analysis

3           Plaintiff argues that the ALJ improperly failed to account for functional limitations with

4   respect to fingering and handling caused by plaintiff's arthritis.  She argues that this was in error

5   in light of the opinions of an examining physician and a consulting physician who determined that

6   manipulative limitations would be necessary.

7           The ALJ's residual functional capacity ("RFC") assessment did not include any

8   manipulative limitations.  Instead, the ALJ found that plaintiff can perform a wide range of light

9   work except for certain environmental limitations.  In support of the RFC, the ALJ gave weight to

10  the October 30, 2010 opinion of an examining physician, Dr. Satish Sharma.  See AR 518-21.

11  Dr. Sharma's physical examination revealed normal functioning in plaintiff's wrists and fingers

12  of both hands.  Dr. Sharma concluded that plaintiff has no limitations in holding, fingering or

13  feeling objects.

14          Contrary to Dr. Sharma's opinion, other doctors concluded that plaintiff's arthritis would

15  limit her ability to finger and handle.  On August 30, 2007, another examining physician, Dr.

16  Philip Seu, conducted a comprehensive internal medicine evaluation of plaintiff.  AR 324-28.  In

17  considering plaintiff's chief complaints of stroke and arthritis, Dr. Seu reviewed plaintiff's

18  medical records, including a March 2004 head scan and June 2005 x-ray of plaintiff's wrist

19  showing minimal osteoarthritis.  Plaintiff reported to Dr. Seu that she had experienced

20  generalized joint pain in her hands, wrists and knees for three years.  Although she was prescribed

21  medication in the past for the pain, she no longer took it because she does not have health care

22  coverage.  She reported that her symptoms are worse in the morning and the pain in her knees is

23  exacerbated by kneeling, squatting or prolonged standing or walking.  Following a physical exam,

24  Dr. Seu found that plaintiff had mild arthritic changes in her hands.  He diagnosed her with mild

25  arthritis in her hands and wrists and, as to her functional assessment, determined that she had mild

26  manipulative limitations and would have difficulty with frequent grasping and fingering due to

27  the arthritis in the hands.

28          On September 17, 2007, consulting physician Dr. H.X. Pham completed a Physical

11

1    Residual Functional Capacity Assessment of plaintiff.  AR 329-33.  With regard to plaintiff's

2    manipulative limitations, Dr. Pham noted that plaintiff has unlimited ability to reach in all

3    directions and to feel, but that she has limited ability to handle and finger.  On review of Dr.

4    Seu's report, Dr. Pham found Dr. Seu's opinion regarding the limits on plaintiff's ability to grasp

5    and finger to be reasonable.

6         These opinions are further supported by an earlier, December 2005 opinion provided by

7    Dr. John Francis of Lodi Memorial Hospital,[2] who, relying on the June 2005 x-ray of plaintiff's

8    wrists, noted that plaintiff's right wrist osteoarthritis limited her abilities for fine motor

9    movements in the hands and rendered her unable to use her hands in a repetitive motion.  See AR

10   286, 299-300.

11        While the ALJ cited to all three of these opinions, she ultimately concluded that "the

12   evidence establishes the claimant had only mild arthritis."  AR 31.  But this is a mere conclusion

13   that is non-specific and requires the court to eke out what it perceives to be the ALJ's reasons.

14   While there are numerous permissible reasons for an ALJ to discount the weight given to the

15   opinion of an examining and/or consulting physician, the ALJ must actually state those reasons

16   and provide factual support from the record that constitutes substantial evidence.  Here, that the

17   medical evidence—presumably the June 2005 x-ray of plaintiff's wrist—established only mild

18   arthritis does not clarify the ALJ's assessment of these opinions and is an inadequate explanation

19   of the ALJ's decision, which makes "[j]udicial review of an administrative decision …

20   impossible."  DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's

21   failure to explain why he disregarded medical evidence prevented "meaningful judicial review");

22   Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 ("Long-standing principles of

23   administrative law require us to review the ALJ's decision based on the reasoning and factual

24   findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

25   adjudicator may have been thinking."); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[I]n

26   dealing with a determination or judgment which an administrative agency alone is authorized to

27

28   _____
     [2] It is unclear whether this doctor was a treating, examining or consulting physician.

1    make, [courts] must judge the propriety of such action solely by the grounds invoked by the

2    agency.  If those grounds are inadequate or improper, the court is powerless to affirm the

3    administrative action by substituting what it considers to be a more adequate or proper basis.").

4    D.      Remand is Required

5        The ALJ did not provide specific and legitimate reasons based on substantial evidence in

6    the record to discount the opinions of Drs. Seu and Pham.  Generally, "[w]here the Commissioner

7    fails to provide adequate reasons for rejecting the opinion of a treating or examining physician,

8    [the Court credits] that opinion as 'a matter of law.'"  Lester, 81 F.3d at 830–34 (finding that, if

9    doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing

10   (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989))).  Crediting an opinion as a

11   matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of

12   disability.  See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

13       Courts retain flexibility, however, in applying this crediting-as-true theory.  Connett v.

14   Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

15   were insufficient findings as to whether plaintiff's testimony should be credited as true).  "In

16   some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able

17   claimant."  Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1278 (C.D. Cal. 1996)

18   (remanding for further proceedings where the ALJ made a good-faith error in that some of his

19   stated reasons for rejecting a physician's opinion were legally insufficient).

20       Here, the ALJ erred because the stated reason for rejecting the aforementioned opinions is

21   legally insufficient.  "Such good faith errors inevitably will occur.  Reasonable judicial minds

22   sometimes will disagree regarding proper application of the rather imprecise standard of 'specific,

23   legitimate' reasons."  Barbato, 923 F. Supp. at 1278.  "[U]nder the rule in Lester, the [medical]

24   opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the

25   opinion fall short of the ill-defined 'specific, legitimate' standard."  Id. (footnote omitted).  "A

26   reviewing court should have discretion to avoid this inequitable result by remanding the case for

27   further administrative proceedings.  Remand necessitates delay, but the cost of this delay should

28   be balanced against the risk of an erroneous determination."  Id.; see also McAllister v. Sullivan,

13

1    888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health

2    and Human Services was in better position than court to point to evidence in record to provide

3    specific, legitimate reasons to disregard treating physician's opinion).  Accordingly, the court

4    exercises its discretion to remand this case to the Commissioner for further proceedings.  See

5    McAllister, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite

6    specific and legitimate reasons for disregarding medical opinions).

7           Based on the foregoing, IT IS ORDERED that:

8           1.  Plaintiff's motion for summary judgment is granted in part;

9           2.  The Commissioner's cross-motion for summary judgment is denied; and

10          3.  This matter is remanded for further proceedings consistent with this order.

11   DATED: December 27, 2013

12   _____
     ALLISON CLAIRE
13   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14